**United States District Court**
For the Northern District of California

1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    NORTHERN DISTRICT OF CALIFORNIA

7

8    UNITED STATES OF AMERICA,                    No. CR-12-0834 EMC

9              Plaintiff,

10         v.                                       **FINAL PRETRIAL CONFERENCE
                                                  ORDER**
11   MONICO DOMINGUEZ,

12             Defendant.
     _____/

13

14

15                    **I.    MOTION TO SEVER**

16         Defendant Juan Partida ("Partida") filed the instant motion to sever his trial from co-

17   defendant Monico Dominguez ("Dominguez").  For the reasons set forth below, Partida's motion is

18   hereby **GRANTED**.

19   A.    Introduction

20         The current case encompasses two robberies of Garda, a company that provides armored car

21   and cash logistics services: (1) the August 2011, robbery of a Garda warehouse, in which $900,000

22   was stolen ("August 2011 robbery"); and (2) the August 2012 attempted robbery of a Garda truck

23   ("August 2012 robbery attempt").  Partida is charged with the August 2011 robbery and not the

24   August 2012 robbery attempt, whereas Dominguez is charged with both.  Partida interposes three

25   legal bases for severance.  *First*, Partida contends that trying him with Dominguez constitutes

26   misjoinder under Fed.R.Crim.P. 8(b).  *Second*, he contends the Court should exercise discretion to

27   grant severance under Fed.R.Crim.P. 14(a) to avoid prejudice.  Specifically, Partida contends that

28   most of the evidence in the current case relates to Dominguez alone and is so overwhelming that his

United States District Court

For the Northern District of California

1   defense would be prejudiced, and that this prejudice rises to the level of denying him a fair trial.

2   *Third*, Partida contends hearsay statements made by Dominguez to an accomplice that implicate him

3   (*i.e.*, Dominguez describes Partida as his "inside source" within Garda) constitute a *Bruton*

4   violation, or otherwise violate the Confrontation Clause, violation and accordingly mandate

5   severance.

6         In their moving papers, the parties agreed that joinder of ***parties*** is appropriate for the August

7   2011 robbery.  However, they part company as to the August 2012 robbery attempt and whether

8   Partida's trial should include testimony and evidence from that crime.  Accordingly, at the pretrial

9   conference hearing, the Court tentatively proposed the current matter be severed "horizontally" by

10   sequence in time – *i.e.*, try the August 2011 robbery first (both defendants), and then, try the August

11   2012 robbery attempt (Dominguez).  After oral argument, the parties all agreed that the most prudent

12   course of action, if there is to be severance, would be to sever the case "vertically" – trying each

13   defendant separately (Dominguez for the 2011 and 2012 events and Partida for the 2011 robbery).

14   The question is whether severance is warranted.

15   B.   <u>Misjoinder Under Rule 8</u>

16         Rule 8(a) only applies to joinder of offenses against a single defendant.  *U.S. v. Satterfield*,

17   548 F.2d 1341, 1344 (9th Cir. 1977).  Thus, under Rule 8(a), joinder of the August 2011 robbery and

18   August 2012 robbery attempt in a single indictment is proper as to Dominguez.  However, where, as

19   here, more than one defendant is named in the indictment, the provisions of Rule 8(b) control.  Rule

20   8(b) provides that joinder of defendants is appropriate only where they are charged with

21   participating in the same or series of transactions:

22             "The indictment or information may charge 2 or more defendants if
             they are alleged to have participated in the same act or transaction, or
23             in the same series of acts or transactions, constituting an offense or
             offenses. The defendants may be charged in one or more counts
24             together or separately. All defendants need not be charged in each
             count."

25

26   Fed.R.Crim.P. 8(b).  In interpreting what constitutes a "series of transactions," the Ninth Circuit has

27   held that in contrast to Rule 8(a), mere factual similarity is not enough under Rule 8(b).  *Satterfield*,

28   548 F.2d at 1344.  Nor is showing the offenses occurred at the same time or violate the same statute.

United States District Court

For the Northern District of California

1  *Id.* Instead, there must be some "greater 'logical relationship' between the occurrences." *U.S. v.*

2  *Ford*, 632 F.2d 1354, 1372 (9th Cir. 1980). Such a relationship may be shown by the existence of "a

3  common plan, scheme, or conspiracy." *Id.*

4      While not all defendants need to have participated in every act constituting each joined

5  offense, joinder is proper only if all of the offenses charged in the indictment arose out the same

6  series of transactions, *Satterfield*, 548 F.2d at 1344, and all defendants can be said to have

7  participated in that series of acts or transactions, see *U.S. v. Kennedy*, 564 F.2d 1329, 1333-1334

8  (9th Cir. 1977).

9      Although both defendants are charged with the August 2011 robbery, only Dominguez is

10  charged with the August 2012 robbery attempt. The Government does not contend that Partida

11  participated in or ever knew about the 2012 attempted robbery. The evidence proffered does not

12  show that Partida participated in the same series of acts or transactions to carry out a common plan.

13      While a single conspiracy may constitute the "series of transactions" permitting joinder of

14  multiple defendants all of which participate therein, *see e.g.*, *U.S. v. Abushi*, 682 F.2d 1289, 1296

15  (9th Cir. 1982) (finding no misjoinder based on conspiracy allegations), the Government does *not*

16  allege a *single* conspiracy tying the two key substantive counts for the 2011 and 2012 transactions

17  together. No overarching conspiracy is alleged in the Superseding Indictment. *Cf. U.S. v.*

18  *Valenzuela*, 596 F.2d 824, 829 (9th Cir. 1979) (referring to a single conspiracy count: "Here the

19  requisite relatedness of the series of acts alleged in the substantive counts hinges upon the

20  conspiracy count which ties all of the substantive offenses together."); *Baker v. U.S.*, 393 F.2d 604

21  (9th Cir. 1968) (same: Count I of a three-count indictment charged defendants with being part of a

22  single conspiracy).

23      Not only does the Government fail to allege such a conspiracy, it does not point to facts that

24  would show the two robberies are unified by a single overarching conspiracy. Partida is not even

25  alleged to have been aware of the second conspiracy to commit the August 2012 robbery attempt.

26  *Cf. U.S. v. Chavez*, No. 86-1233, 1988 WL 45368 (9th Cir. Apr. 28, 1988) (finding joinder proper

27  because members of separate conspiracies were aware of each other and thus must have done

28  something in furtherance of the conspiracy) (citing *Blumenthal v. U.S.*, 332 U.S. 539 (1947)). The

**United States District Court**
For the Northern District of California

1   Government asserts there are calls to and from Dominguez and Partida during the planning stages of

2   the August 2012 robbery attempt, but this is not sufficient.  There is no evidence that the calls were

3   in furtherance of the August 2012 conspiracy.  Nor does the Government contend that "substantially

4   the same facts must be adduced to prove each of the joined offenses."  *Satterfield*, 548 F.2d at 1344.

5   While there is some evidentiary overlap between the offenses, the two transactions are separated by

6   nearly a year, and the August 2012 robbery attempt occurred long after Partida left the employ of

7   Garda.

8   While joinder of both defendants might be proper if only the 2011 offense were tried, Partida

9   may not be joined with Dominguez if the 2012 offense is to be tried along with the 2011 offense.

10  C.   Severance Under Rule 14

11       Even if joinder were properly pled, there are sufficient grounds to exercise discretion under

12  Rule 14 to sever.  To be sure, a defendant seeking severance faces a high burden.  *U.S. v.*

13  *Hernandez*, 952 F.2d 1110, 1115 (9th Cir. 1991) (explaining "[c]learly, this is not an easy burden to

14  meet."), citing *U.S. v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980); *U.S. v. Rosca*, 233 Fed.

15  Appx. 605, 607 (9th Cir. 2007) (unpublished disposition) (noting defendant could not meet the

16  "demanding burden" necessary for severance).  The defendant must show that joinder is so

17  "manifestly prejudicial that the district court was required to conduct separate trials."  *U.S. Jenkins*,

18  633 F.3d 788, 807 (9th Cir. 2011).

19       Here, Partida could be substantially prejudiced by joinder.  The "likelihood of a negative

20  spillover onto" Partida from evidence relevant only against Dominguez with respect to the August

21  2012 robbery attempt offense is significant.  While a limiting instruction might cabin such potential

22  prejudice, expected testimony from Fierro, a cooperating witness that Dominguez intended to "hit

23  the car" driven by Dominguez's cousin or that "Dominguez stated that he and his cousin could only

24  pay Fierro $50,000" for helping with the planned August 2012 robbery would present a *Bruton*

25  and/or Confrontation Clause problem.  Although *Bruton* is not applicable to statements made in

26  furtherance of a conspiracy under Fed.R.Evid. 801(d)(2)(E), *U.S. v. McCown*, 711 F.2d 1441, 1448

27  (9th Cir. 1983), the statements in this case were not made in furtherance of the 2012 conspiracy.  *See*

28

*U.S. v. Beale*, 921 F.2d 1412, 1423 (11th Cir. 1991) ("it was error to admit a statement which merely advances some other conspiracy not involving the defendant against whom it was admitted").

Thus, even if this Court held that the offenses were not misjoined under Rule 8(b), the prejudice arising from the overwhelming inculpatory evidence relevant only to Dominguez and the *Bruton*/Confrontation Clause issues would justify this Court in exercising discretion to grant severance under Rule 14. While exclusion or sanitation of the subject testimony would mitigate the *Bruton* problem, all parties agreed the best solution would be to sever Partida's trial from Dominguez's.

Accordingly, Partida's motion to sever is **GRANTED**. Dominguez shall appear for trial beginning on February 7, 2014. Partida is ordered to appear at a status conference set for March 12, 2014 at 2:30 p.m., at which time his trial shall be set. As stated on the record, time is excluded for Partida. The Court issues the instant Final Pretrial Conference order governing the first trial of Defendant Dominguez.

## II.   TRIAL DATE & LENGTH OF TRIAL

Jury selection and trial shall commence on February 7, 2014 at 8:30 a.m. Trial days shall last from 8:30 a.m. to 2:00 p.m. Trial is dark on Thursdays, absent further order. The trial will last no longer than three (3) weeks.

## III.   PROCEDURE FOR EXHIBITS AT/DURING TRIAL

A.   No later than the end of each trial day, counsel shall inform opposing counsel of which exhibits (including demonstrative evidence), if any, he or she intends to introduce during the next trial day and, if necessary, with respect to which sponsoring witness. If any such exhibits are still objected to, both counsel shall notify the Court after the jury is excused for the day and shall identify the exhibits at issue and the objections. The Court will then schedule a conference that afternoon or the following morning to resolve the dispute.

B.   At the end of each trial day, counsel shall also provide opposing counsel with a tentative preview of the exhibits he or she intends to introduce during the trial day after next. Parties are directed to make a good faith effort to ensure such previews are as accurate as possible.

**United States District Court**
For the Northern District of California

C.   With respect to exhibits to be used on the first day of trial, counsel shall inform opposing counsel of which exhibits, if any, he or she intends to introduce by Thursday, February 6, 2014, at 5:00 p.m.  If any such exhibits are still objected to, both counsel shall notify the Court by February 7, 2014, at 2:00 p.m., and shall identify the exhibits at issue and the objections.  The Court will then address the dispute on the first day of trial, February 10, 2014, before any testimony begins.

D.   If a party intends to use a projector or other equipment to show an exhibit (or demonstrative) to the jury, that equipment shall be set up and ready for use by 8:30 a.m. each day.  The parties should immediately file with the Court, if necessary, administrative requests to bring projectors and/or other equipment to the courthouse for use at trial.

## IV.   PROCEDURE FOR WITNESSES AT/DURING TRIAL

A.   Each party shall be prepared, during its case in chief or any rebuttal, to present its next witness.  At any time, if the party whose case is being presented is not prepared to present its next witness, that party shall be deemed to have rested that portion of its case.  No further witnesses shall be permitted by the party who has so rested in that portion of the case (*e.g.*, case in chief or rebuttal).

B.   Counsel are expected to cooperate with each other in the scheduling and production of witnesses, including informing one another of witness order.  At the end of each trial day, Counsel shall give opposing counsel notice of which witnesses will be testifying on the following day.  At that time, counsel shall also provide a tentative preview of witnesses who are expected to testify the day after next.  Witnesses may be taken out of order if necessary.  Every effort shall be made to avoid calling a witness twice (as an adverse witness and later as a party's witness).

C.   Only one lawyer for each party may examine any single witness.

D.   If a witness is testifying at the time of a recess or adjournment and has not been excused, the witness shall be seated back on the stand when the Court reconvenes.  If a new witness is to be called immediately following recess or adjournment, the witness should be seated in the front row, ready to be sworn in.

**United States District Court**
For the Northern District of California

E.      Counsel shall refrain from eliciting testimony regarding any undisputed facts as set forth in any stipulation filed with the Court.  The Court may read to the jury such undisputed facts at appropriate points in the trial.

F.      Witnesses shall be excluded from the courtroom until completion of their testimony.

## V.      OTHER PROCEDURES AT TRIAL

A.      To make an objection, counsel shall rise, say "objection," and briefly state the legal ground (*e.g.*, hearsay or irrelevant).  There shall be no speaking objections or argument from either counsel unless requested by the Court.

B.      Bench conferences, or the equivalent of sidebars, will not be permitted absent truly extenuating circumstances.  Disputes regarding exhibits shall be resolved as set forth in Part II, *supra*.  Any other disputes or problems should be addressed either before the trial day commences, at the end of the trial day, or during a recess, if necessary.

## VI.      GOVERNMENT'S MOTIONS IN LIMINE

A.      Motion in Limine No. 1: References to Punishment

The Government requests that defendants refrain from making "any reference ... to the defendants' potential sentence during all phases of the trial."  Docket No. 87 (Mot., at pg. 2).

Dominguez does not object to this motion: "Defendant Monico Dominguez does not oppose the Government's Motion to preclude reference to any trial defendant's punishment as a result of a verdict in this case."  Docket No. 111 (Opp'n, at pg. 1) (emphasis in original).

Accordingly, the Government's motion is **GRANTED**.

B.      Motion in Limine 2: Pre-Admit Co-Conspirator Statements

The Government is seeking to "pre-admit" certain statements made by Dominguez to Fierro (co-conspirator and cooperating witness), which implicate Partida – *i.e.*, Dominguez had a cousin (Partida) working on the "inside" within Garda, Partida came up with the plan to rob the Garda warehouse, Partida provided a hand-drawn map of the Garda warehouse, Partida instructed that Garda drivers were not allowed to shoot back if robbed, Dominguez planned to "hit the car" driven by Partida, Dominguez and Partida could only pay Fierro $50,000 for his assistance in the August

-7-

1    2012 robbery.  The Government contends that the statements are admissible under Fed.R.Evid.

2    801(d)(2)(E) (co-conspirator exception).

3    Dominguez objects to pre-admission of these statements without argument, or otherwise

4    further elaborating the basis for his objections.  By contrast, Partida objects on three specific

5    grounds.  *First*, these statements are inadmissible because they violate the Confrontation Clause.

6    Put another way, Partida contends he is denied the right to cross-examine Dominguez, the source of

7    the statements at issue.  *Second*, admission of the statements violate *Bruton v. U.S.*, 391 U.S. 123

8    (1968), in that a "confession of a non-testifying co-defendant which implicates the defendant is

9    inadmissible in a joint trial of the two individuals."  *See id.* at pg. 2.  *Third*, the co-conspirator

10   exception to the hearsay rule (Rule 8(d)(2)(E)) does not help the Government because they have

11   failed to make out the preliminary showing necessary for that exception to come into play.  For

12   instance, Partida contends that the Government has failed to prove up "the existence and

13   membership of the conspiracy" "with evidence other than the hearsay statement at issue."  Docket

14   No. 112 (Opp'n, at pgs. 2-3).  However, as noted above, the Court has ruled that defendants shall be

15   tried separately.  Partida's objections have no bearing on a trial of Dominguez only.  Accordingly,

16   the Court shall defer ruling on Partida's objections.

17   Essentially, Dominguez preserves his objections subject to raising specific objections at trial

18   depending on how and what testimony the Government actually elicits from its witnesses.  At the

19   pretrial conference hearing, the Government clarified it sought to raise a potential evidentiary issue

20   rather than actually seek to "pre-admit" the subject witness testimony.

21   Accordingly, the Government's motion to elicit an early ruling on (*i.e.*, "pre-admit") certain

22   testimony is **DENIED** without prejudice.  The Government is free to elicit such testimony subject to

23   any specific objections raised by Dominguez at trial.  The Court shall defer ruling on the issue now

24   in this Order and instead shall rule on any such specific objections interposed by Dominguez at trial.

25   C.    Motion in Limine 3: Pre-Admit Cooperation Agreements

26   The Government moved to admit plea agreements of cooperating witnesses for use on

27   rebuttal if defendants attempt to challenge the credibility of any such witnesses.  Dominguez objects

28   to admission of the *entire* agreement on grounds it would be unduly prejudicial under Fed.R.Evid.

United States District Court

For the Northern District of California

403.  Docket No. 111 (Dominguez's Opp'n, at pg. 2) (For instance, language of the agreements providing for a reduction in sentence are framed in legalese ("Downward Departure"), which is not readily comprehended by a layperson.).  The Government responded during the hearing that admission of the actual plea agreement constitutes the best evidence.

A district court should be vigilant "to the problem of vouching before admitting a plea agreement containing a promise to testify truthfully." *Id.*  Thus, a prosecutor cannot use a plea agreement to gird or vouch for a witness's trustworthiness.  *U.S. v. Brooklier*, 685 F.2d 1208, 1218 (9th Cir. 1982) ("Although, as the court in Roberts [sic] pointed out, plea agreements are admissible on the issue of bias, they are not to be used as a basis for supporting the truthfulness of the witness' testimony.").  However, mere "reference to the 'truthful testimony' provisions of a witness's agreement with the government does not constitute vouching if it is made in response to an attack on the witness's credibility because of his plea bargain." *U.S. v. Monroe*, 943 F.2d 1007, 1013 (9th Cir. 1991).  Even so, "[e]vidence is not admissible ... simply because it is contained in or is offered to explain a plea agreement." *Id.*  Instead, a district court must also weigh the probative value against any prejudicial impact, especially where a jury may use the information improperly. *Id.* at 536.  "[T]his test applies equally to evidence offered to rehabilitate a witness who has been impeached for bias." *Id.* at 536.

To be sure, the Ninth Circuit has affirmed admission of plea agreements for impeachment purposes.  Yet, even in those instances, plea agreements are not admitted *in toto* as a matter of course.  *U.S. v. Rohrer*, 708 F.2d 429, 433 (9th Cir. 1983) (affirming admission of "full text of cooperation agreement only after appellants' ***extensive*** impeachment of Green's motives on cross-examination and their ***discussion*** of part of the agreement") (emphasis added); *U.S. v. Halbert*, 640 F.2d 1000, 1006 (9th Cir. 1981) (finding no error in admitting plea agreements only after witness credibility attacked and because agreements "were neither read nor emphasized to the jury"; yet, reversing for failure to properly instruct jury that plea agreement could only be used to assess a witness' credibility and not to infer defendant's guilt); *Brooklier*, 685 F.2d at 1218 (admissible to show bias, but not to support truthfulness of witness's testimony; finding no appellate error where

United States District Court

For the Northern District of California

1   the court cautioned the jury that "[plea] agreement requiring the witness to testify truthfully did not

2   mean that the testimony was in fact truthful."); *U.S. v. Tham*, 665 F.2d 855, 862 (9th Cir. 1981)

3   (affirming prosecutor's referenced to terms of plea agreement, as "issue of the admissibility of the

4   plea agreement ha[d] not been presented" to the court, and finding no error where jury was

5   adequately instructed).  Additionally, where plea agreements were admitted, the court carefully

6   instructed jurors regarding its proper use.  *See e.g.*, *U.S. v. Shaw*, 829 F.2d 714, 718 (9th Cir. 1987)

7   (affirming "reference to truthfulness in the plea agreement" where district court instructed jury that

8   testimony of beneficiary of plea bargain should be viewed with greater caution, yet noting court

9   should have also instructed jury that by referring to truthfulness provisions of plea agreement

10   government had no way of knowing whether witness's testimony was truthful or not).

11         The Court has reviewed the plea agreements at issue and finds that the probative value of the

12   wholesale publication of these agreements to the jury would not outweigh the likely confusion it

13   would engender.  Accordingly, the Government's motion in limine to pre-admit the plea agreements

14   is **DENIED**.  The Government, however, may elicit testimony relating to certain provisions if a

15   witness's credibility is challenged because of a plea bargain.  Furthermore, the Government is

16   ordered to avoid testimony or use of the plea agreements in a manner that would constitute vouching

17   of a witness's credibility consistent with this pretrial conference order and binding Ninth Circuit

18   precedent discussed herein.

19   D.     Motion in Limine 4: Order Compelling Compliance with General Order 69

20         The Government intends to call local law enforcement officers as trial witnesses.  As such,

21   the Government proposes that any *Giglio/Henthorn* material defendants seek use for impeachment

22   purposes follow the procedure set forth in General Order No. 69—*i.e.*, defendant shall make a Rule

23   17(c) subpoena and file an in limine motion, under seal and pursuant to a protective order, to have

24   the material admitted.

25         Dominguez does not object to this motion in limine.  Accordingly, the Government's motion

26   in limine is **GRANTED**.  The parties are hereby ordered to comply forthwith with General Order 69

27   to extent applicable.  Failure to do so will result in evidentiary sanctions.

28

**United States District Court**
For the Northern District of California

E.      Motion in Limine 5: Evidence Defendant Obligated to Produce Pursuant to Rule 16(b)

The Government contends that defendants have failed to produce <u>any</u> discovery.  Docket No. 87 (Govt's Motion in Limine, at pg. 8), despite formal requests.  The Government specifically calls out documents (and other tangible things) and expert witness reports or opinions.  *See id.* at pg. 9.  In addition, the Government avers they have complied with their discovery obligations under Rule 16, *Brady*, *Giglio*, and the Jencks Act, including having recently produced expert witness discovery to defendants, pursuant to Rule 16(a)(1)(G).  At the hearing, counsel for Dominguez averred compliance with discovery obligations under Rul 16.

The Government correctly notes that the Court may sanction a party for failure to comply with their discovery obligations under Rule 16.  *See e.g.*, *U.S. v. Scholl*, 166 F.3d 964, 972 (9th Cir. 1999) (affirming exclusion of checks not produced until after a jury was empaneled).  However, exclusion is a drastic remedy and an "appropriate remedy for a discovery rule violation only where 'the omission was willful and motivated by a desire to obtain a tactical advantage.'"  *U.S. v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (reversing exclusion where there was no evidence of such motivation or intent), citing *Taylor v. Illinois*, 484 U.S. 400, 415 (1988)).

Although the Government contends that defendants have failed to meet their obligations, the parties have already submitted a joint exhibit list and their respective witness lists.  Dominguez confirmed he does not intend to call any expert witnesses at trial.  The parties should take note that the Court may sanction belated designations.  *U.S. v. Urena*, 659 F.3d 903, 908 (9th Cir. 2011) (finding "no abuse of discretion in the district court excluding the proffer of a new expert not disclosed in pretrial conference or pretrial order.").  The Court notes that in this regard, the Government's designation of the geo-locational expert who is expected to opine on the geographic location of Dominguez based on his cell phone data will not be excluded on the basis of its timing.

The Government's motion to exclude Defendant's evidence is **DENIED** without prejudice.

F.      Motion in Limine 6: Preclusion of Defense From Reading Interview Summaries

The Government has asked the Court to limit defendants' use of any interview summaries of certain witnesses in this action.  The Government clarified at the hearing that these summaries were prepared by the FBI (*i.e.*, "Form 302s") and the Santa Rosa Police Department.  Specifically, the

Government requests the Court preclude defendants from (1) impeaching witnesses using these interview summaries; and (2) publishing the interview summary contents to the jury (or attributing the summaries to a given witness).  In sum, the Government objects to impeaching witnesses using statements made in witness summaries (or otherwise attributing those statements) when these statements are in actuality not the witness's own but the product of the preparer's selections and interpretations.  Docket No. 87 (Govt's Motion in Limine, at pg. 9) (citing *Palermo v. U.S.*, 360 U.S. 343 (1959)).

The parties agree that defendants should be allowed to cross examine witnesses so long as the witness is given an opportunity to accept, reject, or otherwise explain the ascribed statement found in a witness summary.  However, without the benefit of a specific witness statement, this Court shall not issue a blanket ruling on any given witness statement as an individual assessment of the statement and its particular use at trial would be required.  *See e.g.*, *U.S. v. Quassani*, No. 11-CR-00409-LRH, 2013 WL 2476799, at *3 (D. Nev. June 7, 2013) (declining to exclude categorically FBI Form 302 reports and finding "[r]esolving th[e] question require[d] individual assessment of the FBI 302s at trial.").

Accordingly, the Government's motion in limine is **GRANTED** in part and **DENIED** in part.  For cross examination purposes, defense counsel shall be permitted to read from witness summaries and ask the witness about statements made therein or use such statements to refresh the witness's recollection.  However, such statements themselves are not admissible as evidence unless the prior statement is substantially verbatim and the witness is afforded an opportunity to adopt, reject, or explain the statement.  Witness summaries shall otherwise not be published to the jury.

## VII.   DOMINGUEZ'S MOTIONS IN LIMINE

A.   Motion in Limine No. 1: Dominguez's State of Mind or Intent and/or Opinions of Guilt

Dominguez moves to exclude certain statements or testimony by "law enforcement agents and witnesses" that purportedly "gave an opinion[] or speculated about the state of mind of Monico Dominguez," or his guilt (*e.g.*, Det. Boettger, Kevin Jensen, and Caitlin Butler), on grounds of relevance (Fed.R.Evid. 402) and undue prejudice (Fed.R.Evid. 403).  The Government stipulates it will not elicit testimony from Det. Boettger about Dominguez's change in demeanor after

1   cooperating witness Kevin Jensen brought up the prior robbery during a conversation.  The

2   Government further stipulates it will not elicit testimony from Caitlin Butler regarding her opinions

3   of Dominguez's guilt.  However, the Government contends that Kevin Jensen should still be

4   permitted to testify regarding Dominguez's statements and the change in demeanor after Kevin

5   Jensen brought up a prior robbery.

6        A district court may properly admit "demeanor" testimony by a lay witness.  *See U.S. v.*

7   *Sepulveda*, 392 Fed. Appx. 529, 531-532 (9th Cir. 2010) (unpublished disposition) (finding

8   admissible opinion testimony of customs agent regarding demeanor of witness where "predicated

9   upon concrete facts within their own observation").  *See also U.S. v. Mamic*, 90 Fed. Appx. 532, 533

10  (9th Cir. 2004) (unpublished disposition) (noting in dicta that lay witness's demeanor testimony is

11  admissible: "Unlike admissible lay witness testimony expressed in the form of an opinion and based

12  on common experience – such as the speed of the car, or the shocked demeanor of a witness –

13  Pourshalimi's opinion [that] the check was counterfeit was based on his knowledge or experience,

14  *vel non*. The evidence went to a central issue in the case: the bogus nature of the paper.") (italics in

15  original).  The district court, however, should take care to admit demeanor evidence and avoid the

16  admission of testimonial evidence.  *U.S. v. Honeycutt*, 446 Fed. Appx. 838, 840 (9th Cir. 2011)

17  (unpublished disposition) ("Demeanor evidence often involves the admission of evidence

18  concerning a defendant's slurred speech, apparent nervousness, or a defendant's demeanor during a

19  polygraph test, even though the results [of such a test] may not be admissible."), citing *U.S. v.*

20  *Velarde–Gomez*, 269 F.3d 1023, 1030 (9th Cir. 2001) (en banc).

21       Accordingly, Dominguez's motion in limine is **GRANTED** in part to the extent testimony is

22  offered to speculate on Dominguez's state of mind or opinions regarding Dominguez's guilt for the

23  offenses charged in the Superseding Indictment, and **DENIED** to the extent the testimony relates to

24  proper demeanor testimony.

25  B.   Motion in Limine No. 2: Revocation of Dominguez's Passport

26       Dominguez moved to exclude evidence relating to the revocation of his passport, on grounds

27  of relevance (Fed.R.Evid. 402) and undue prejudice (Fed.R.Evid. 403).  The Government stipulates

28  it will not offer evidence relating to Dominguez's citizenship during their case-in-chief.

United States District Court

For the Northern District of California

-13-

1    Accordingly, the Dominguez's motion in limine is **GRANTED**.

2    C.    <u>Motion in Limine No. 3: Impeachment by Prior Conviction</u>

3    Dominguez moves to preclude the Government from using prior misdemeanor convictions to

4    impeach his testimony, on grounds that such evidence is not admissible under Fed.R.Evid. 609(b).

5    The Government agrees.

6    Accordingly, the Dominguez's motion in limine is **GRANTED**.

7    D.    <u>Motion in Limine No. 4: Ownership or Intent to Own Property or Travel to Costa Rica</u>

8    Dominguez moved to exclude evidence of his ownership of (or intention to own) property in

9    Costa Rica, or his intention to move there in the near future, on grounds of relevance (Fed.R.Evid.

10   402) and undue prejudice (Fed.R.Evid. 403).  The Government avers these statements were uttered

11   during an August 2012 recorded phone conversation with Kevin Jensen, a proposed accomplice, that

12   were allegedly made during the planning stages of the August 2012 robbery attempt.  The

13   Government opposes the motion, contending such evidence is probative of Dominguez's

14   "consciousness of wrongdoing" and show "substantial premeditation and planning" (*i.e.*, probative

15   of Dominguez's plan "to take his money and run").  In sum, the Government contends that such

16   evidence constitutes "classic 'intent to flee'" evidence and as such is admissible.  Dominguez failed

17   to file a reply brief on this motion in limine.

18   This evidence is relevant.  *See U.S. v. Velarde-Gomez*, 269 F.3d 1023, 1039 (9th Cir. 2001)

19   ("Evidence of flight is generally admissible as evidence of consciousness of guilt and of guilt

20   itself."), citing *U.S. v. Harris*, 792 F.2d 866, 869 (9th Cir. 1986); *U.S. v. Barnhart*, 889 F.2d 1374,

21   1378 (5th Cir. 1989) (defendant's comments concerning "desirability of going to Bogota was

22   relevant not only as reflecting his desire to flee, but was relevant as reflecting his state of mind, his

23   intent and his knowledge prior to going before the grand jury a second time.").  These statements are

24   probative of Dominguez's state of mind concerning the planning of the August 2012 robbery attempt

25   for which he is charged and that he acted intentionally.  The evidence is also more probative than

26   prejudicial.  *See e.g.*, *U.S. v. Maddox*, 944 F.2d 1223, 1229 (6th Cir. 1991) (finding more probative

27   than prejudicial evidence that a drug co-conspirator intended to flee because he feared being

28   convicted), *as amended on denial of reh'g sub nom by U.S. v. Arnold*, 12 F.3d 599 (6th Cir. 1993).

1    Accordingly, Dominguez's motion in limine is **DENIED**.

2    E.    Motion in Limine No. 5: Guilty Plea of Non-Testifying Co-Defendants

3    Dominguez moves to exclude evidence of co-defendant Juan Dominguez, Jr.'s guilty plea,

4    on grounds of relevance (Fed.R.Evid. 402) and undue prejudice (Fed.R.Evid. 403).  The

5    Government agrees.

6    Accordingly, Dominguez's motion in limine is **GRANTED**.

7    F.    Motion in Limine No. 6: Character Evidence or Uncharged Bad Acts

8    Dominguez moves to exclude "inflammatory" and "gratuitous" comments by Government

9    witnesses about Dominguez's character or speculation about his activities, on grounds of relevance

10   (Fed.R.Evid. 402), undue prejudice (Fed.R.Evid. 403), and improper character evidence

11   (Fed.R.Evid. 404(a)).  Specifically, Dominguez seeks to exclude statements from Caitlin Butler,

12   cooperating witness and former girlfriend, that there "is a conceivable hit out on her," that

13   Dominguez is a "compulsive liar," and Dominguez "could be telling lies about her."

14   The Government agrees and stipulates not to elicit such testimony at trial.

15   Accordingly, Dominguez's motion in limine is **GRANTED**.  However, the Court's ruling

16   here does not preclude admissibility of impeaching testimony if Dominguez elicits testimony

17   relating to his general reputation for truthfulness, as provided for under Fed.R.Evid. 608(a).

18   G.    Motion in Limine No. 7: Testimony of Chance Trishel

19   Dominguez seeks exclusion of testimony of Chance Trishel, putative "jailhouse snitch" who

20   is expected to testify regarding Dominguez's involvement in the August 2011 robbery and alleged

21   efforts by Dominguez to bribe cooperating witness Kevin Jensen to obstruct justice, because the

22   Government allegedly failed to fully disclose *Brady/Giglio* material to the defense.

23   The Government admits inadvertently not providing the defense with certain state records

24   document all inducements provided to Mr. Trishel for his testimony but avers defense counsel is

25   now in possession of these documents.  The Government further avers that it has now provided

26   Dominguez with all *Brady/Giglio* material to which he is entitled.

27   Accordingly, Dominguez's motion on the facts presently before the Court is **DENIED** as

28   moot, but without prejudice (in the event any *Brady/Gigilio* violation is found).

**VIII.   WITNESSES & EXHIBITS**

A.   Government's Witnesses and Exhibits

The Government's amended witness list identifies 49 individuals but reserves its right to add to or modify the witness list.  Docket No. 125.  The Government disclosed an expert witness after the time set by the Court's First Amended Pretrial Order.  Docket No. 126.  Dominguez did not object to this late designation.  The Government has also filed a list of approximately 128 exhibits. Docket No. 118.

In addition to motions in limine, Dominguez filed specific objections to the Government's exhibit list, which appear in the parties' joint exhibit list.  Docket Nos. 86 (Dominguez's Motion in Limine), 118 (Joint Exhibit List).  The Court issued its bellwether order requesting the parties identify exhibits requiring a ruling in advance of trial.  Docket No. 128.  In the parties' joint statement responding to the Court's bellwether order, Dominguez withdrew his specific objections contained in the parties' joint exhibit list, except those exhibits falling within his motions in limine (*e.g.*, Government's Ex. 62) and Government's Exhibits 89-125.

The Court now rules on these objections as well as the objections to the Government's witnesses, as set forth in the defendants' motions in limine, or oppositions.

1.   Objections to Government's Witnesses

Per the Court's amended pretrial order (Docket No. 63), the Court ordered the parties to file objections to each parties' witnesses by January 21, 2014.  Dominguez filed no objections to the Government's witnesses.  The Court extended the deadline to file objections to January 23, 2014 at 4:00 p.m.  At present, aside from motions in limine, Dominguez has filed no objections to the Government's witnesses.

2.   Objections to Government's Exhibits

The Court rules on the Dominguez's specific objections to the Government's exhibits as follows:

Exhibits 61-63          SUSTAINED, without prejudice.  The Government may refer to certain provisions in these exhibits for rehabilitation purposes

United States District Court

For the Northern District of California

consistent with the Court's motion in limine ruling.  *See* Ruling on Government's MIL #3.

Exhibits 89-91,
92-102,
109, 113,
115-25:     OVERRULED in part, SUSTAINED in part.  This evidence consists of a large cache of firearms, tactical gear, and other items seized by law enforcement authorities for which the parties' sought a ruling in advance of trial.  *See* Docket No. 132 (Joint Statement re Bellwether Order).  Most are relevant to the section 924(c) charge, proving up Dominguez's connection to the August 2012 robbery attempt, and money laundering charges.  Dominguez's objections are OVERRULED as to those exhibits: (1) for which a foundation is laid tending to prove that particular items were instrumentalities of the charged crimes, (2) purchased with proceeds from the robbery, or (3) were corroborative of witness testimony at trial (*e.g.*, as to what the witness saw at Dominguez's home just before the robbery or attempted robbery), without prejudice to a potential cumulative objection (Fed.R.Evid. 403).  To the extent the items are introduced solely to show *e.g.*, Dominguez's propensity, the objections are SUSTAINED.  The Government must lay a proper foundation for each exhibit at trial.

Exhibits 103,
114:        OVERRULED, conditionally, subject to the Government laying the proper foundation at trial concerning the exhibit's relevance to the money laundering charges.

Exhibit 105:     OVERRULED, conditionally, subject to the Government laying the proper foundation at trial concerning the exhibit's relevance to

1   providing the context to August 2011 robbery and witness, Cesar

2   Contreras, testifies.

3   Exhibit 108:          OVERRULED.  Relevant to money laundering charges.

4   Exhibit 111:          OVERRULED, conditionally, subject to the Government laying the

5   proper foundation at trial concerning the exhibit's relevance to prove

6   conspiracy.

7   B.      Dominguez's Witnesses and Exhibits

8           Dominguez's witness list identifies only two individuals, including Dominguez himself, but

9   reserves its right to add to or modify the witness list.  Docket No. 103.  Specifically, absent a

10  stipulation, Dominguez represents he may call certain Government witnesses to elicit testimony

11  outside of the Government's direct examination of these witnesses.  Dominguez also filed a list of

12  approximately 101 exhibits.  Docket No. 118 (Exhibits 500-580).

13          In addition to motions in limine, only the Government has filed specific objections to

14  Dominguez's exhibit list, which appear in the parties' joint exhibit list.  Docket Nos. 87

15  (Government's Motion in Limine), 118 (Joint Exhibit List).  The Government filed no objections to

16  Dominguez's witness list.

17          The Court now rules on these objections.

18          1.      Objections to Dominguez's Witnesses

19                  a.      Witness Monico Dominguez

20          Only Partida objects to testimony of Dominguez regarding his November 2011 comments,

21  which purportedly implicate Partida in the August 2012 robbery attempt, on grounds such

22  anticipated testimony presents Bruton/Confrontation Clause issues, relevance (Fed.R.Evid. 402), and

23  undue prejudice (Fed.R.Evid. 403).  Docket No. 91.  However, in light of this Court's ruling on

24  Partida's Motion to Sever, this objection is OVERRULED, as moot.

25  ///

26  ///

27  ///

28  ///

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

2.      <u>Objections to Dominguez's Exhibits</u>

The Court rules on the Government's specific objections to Dominguez's exhibits as follows:

Exhibit 565-1

through 565-8:          OVERRULED in part; SUSTAINED in part.  Parties agree they may

be used for the limited purpose of impeachment.  They may also be

used to refresh a witness's recollection (Fed.R.Evid. 612).  Otherwise,

the statements are hearsay.

Exhibit 565-22:          RESERVED.  Certain testimony could be used to impeach a witness

present at the recorded interview and who ultimately testifies in a

manner contradicting the recorded interview.  However, the Smith

statement is hearsay if admitted to prove the truth of the matter Smith

asserted.

Exhibit 566:          OVERRULED in part, SUSTAINED in part.  Not admissible for

impeachment purposes under Fed.R.Evid. 608(b), to the extent

defendant is not charged in the indictment for an act involving

dishonesty or otherwise probative of his veracity.  *See U.S. v. Bentley*,

706 F.2d 1498, 1510 (8th Cir. 1983).  However, a portion of the

exhibit may be admissible to show bias, where a witness's exposure

under the indictment is juxtaposed against what he was able to obtain

as part of a plea deal.

### IX.   JURY VOIR DIRE

Both parties have submitted joint proposed questions for voir dire.  Docket Nos. 99.  The Court may ask the following questions, based on the parties' submissions (in addition to standard background questions).

A.   <u>Background</u>

4.      Have you, any members of your family, or close friends worked in law enforcement

(this category includes police, Federal Bureau of Investigation, Country Sheriff, Drug

-19-

**United States District Court**
For the Northern District of California

Enforcement Administration, District Attorney, Attorney General, United States Attorney, state or federal prisons and/or county jails, etc.)?

5.  Are any of you personally familiar with the Garda armored car company or any such service? If so, how are you familiar with this company? Have you or any family members ever worked as a security guard or in a security capacity?

B.  <u>General Questions Regarding Jurors' Fitness to Serve</u>

9.  This case involves the August 11, 2011 robbery of the Santa Rosa Garda armored car warehouse. Have you read or seen anything about this matter in the press or on the internet?

10.  Do any of the prospective jurors know anything about this case other than what you have heard in this court today?

16.  Do you believe that a defendant in a criminal trial should have to prove his/her innocence, even if the law does not require it? If yes, please explain.

17.  If you are selected as a juror and hear this case, you will be required to deliberate with 11 other jurors. This will require you to discuss the evidence and the law in this case with the 11 other jurors selected. Does anyone anticipate that they will have difficulties engaging in such group discussions.

18.  Is there anything not covered by these questions that could affect your ability to be a fair and impartial juror? If yes, please explain.

C.  <u>Attitude Towards Applicable Law</u>

19.  Do you have any feelings about the laws against armed robbery, money laundering, obstruction of justice, or false statements that would affect your ability to be an impartial juror in this case?

20.  Have you, any member of your family, or any close personal friend, ever been arrested or charged with a robbery-related offense? If so, what were the circumstances?

D.     Experience with Law Enforcement

21.    Have you, any member of your family, or any close personal friend, ever had any contact with a law enforcement officer, other than a routine traffic stop? If so, was that experience a positive or negative one? Has that experience caused you any feelings regarding law enforcement that would make it difficult for you to be a fair and impartial juror towards the Government or the defendants?

22.    You may hear testimony in this case from law enforcement officers, specifically special agents with the Federal Bureau of Investigation ("FBI") or the Santa Rosa Police Department. Do you have any opinion regarding the FBI, the SRPD, or law enforcement in general, that would prevent you from serving as a fair and impartial juror towards the Government or the defendants?

23.    Have you, any member of your family, or any close personal friend, ever filed a lawsuit or complaint against a law enforcement officer or agency?

25.    Have you, any member of your family, or any close personal friend, ever been arrested or charged with a crime other than a minor traffic violation? (If you would like, you may approach sidebar to answer this question.) If so, has that experience caused you any feelings regarding law enforcement or the criminal justice system?

26.    Have you ever had to appear in court, or in any court proceeding, as a plaintiff, defendant, victim, or witness for any reason other than you have indicated above?

27.    As a result of any experience described above, is there anything that would cause you to lean in favor of either the government or the defendants in this case?

28.    Have you, any member of your family, or any close personal friend, ever been incarcerated? (If you would like, you may approach sidebar to answer this question.) If so, has that experience created any strong feelings regarding law enforcement or the criminal justice system?

29.    Would you have any tendency to believe or disbelieve the testimony of a law enforcement officer more than other witnesses?

United States District Court
For the Northern District of California

-21-

**United States District Court**
For the Northern District of California

1  E.      Attitude Towards Investigative Techniques

2          31.     Is there any member of the jury panel who has strong feelings against persons who

3                  have committed crimes and who cooperate with the government to provide

4                  information with the hope of receiving a reduced sentence?

5  F.      Attitude Towards Firearms

6          34.     Do you or any of your friends or family possess or regularly use firearms? If so, what

7                  type of firearm?

8          35.     Do any of you think that the laws restricting the possession or use of firearms are

9                  unfair?

10 G.      Attitude Towards Informants and Undercover Agents

11         36.     This case involves evidence that the government used an informant to assist in its

12                 investigation. The informant was compensated for his work assisting law

13                 enforcement.

14                 a.      Do you believe it is unfair for law enforcement to use undercover operations

15                         in order to enforce criminal laws?

16                 b.      Do you believe it is wrong for an undercover informant to pretend to be

17                         involved in a robbery?

18                 c.      Would you tend to believe the testimony of a person any more or less, simply

19                         because he or she was paid to assist in an undercover operation?

20 H.      Interpreters

21         37.     Some of the witnesses who will testify during the trial do not speak English fluently

22                 and will need an interpreter. Will the use of an interpreter cause any of you to give

23                 more or less credibility to those witnesses?

24         38.     The law requires you to consider the testimony of witnesses as translated into English

25                 by the official court interpreter, even if you understand the foreign language being

26                 spoken by the witness. Will this requirement cause you difficulty in considering the

27                 testimony and evidence in this case?

28

United States District Court

For the Northern District of California

I.      General Punishment and Sympathy

39.     The potential punishment for the offenses charged in the indictment is a matter that should never be considered by the jury in any way in arriving at an impartial verdict as to the guilt or innocence of the accused. Can you put aside concerns about potential punishment in arriving at a fair and impartial verdict in this case?

40.     If the court instructs you that your verdict must not be based on sympathy, passion, or prejudice, but only on the evidence in this case, will you be able to follow that instruction?

## X.      JURY INSTRUCTIONS & JURY VERDICT FORM

The parties submitted a set of joint proposed jury instructions.  Docket No. 109.  The Court has filed proposed jury instructions.  On February 5, 2014 by 5:00 p.m., the parties shall submit a list of any stipulated facts to be read to the jury with the initial instructions.

The parties have filed a joint proposed verdict form.  Docket No. 117.


IT IS SO ORDERED.


Dated:  February 4, 2014

EDWARD M. CHEN
United States District Judge