Gene David Vorobyov, CA Bar # 200193
Law Office of Gene Vorobyov
2309 Noriega Street, # 46
San Francisco, CA 94122

Attorney for Defendant
MONICO DOMINGUEZ

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff and Respondent,

  v.

MONICO DOMINGUEZ,

    Defendant and Appellant

)
)
)
)
)
)
)
)
)
)
)
)

No. 3:12-cr-00834-EMC-1

**Defendant's Resentencing Brief and Objections to the Supplemental Presentence Report**

///

///

///

///

///

///

///

///

///

///

# Table of Contents

Table of Authorities................................................................................ii

Introduction ........................................................................................2

Summary of Argument...................................................................…..….3

Argument

    In Light of the Reduced Number of Counts of Conviction, the Reduced Advisory Guidelines Range, and Dominguez's Continuing Rehabilitation, the Court Should Reduce Dominguez's Prison Term from 165 Months to 149 Months

        A.    Objection to the Proposed 2-level Increase Under U.S.S.G. § 2B3.1(b)(1) for Taking Property Belonging to a Financial Institution.................................................................4

        B.    The Correct Offense Level for the Non-18U.S.C. § 924(c) Group Should Be Offense Level 30, Criminal History Category I, with the Range of 92-121 Months; For 18 U.S.C. § 924(c), it is 60 Months.......................…..………9

        C.    Under 18 U.S.C. § 3553(A), this Court Should Resentence Dominguez to 149 Months

            1.    General legal principles......................…..………11

            2.    The Court should sentence Domingue to 149 Months ................................................................11

Conclusion.....................................................................................13

i

# Table of Authorities

<u>U.S. Supreme Court Cases</u>

*Alleyne v. United States*
570 U.S. 99 (2013)...................................................................................10

*Kimbrough v. United State*
554 U.S. 85 (2007)...................................................................................11

*Pepper v. United States*
562 U.S. 476 (2011)..................................................................................11

<u>Circuit Court Cases</u>

*United States v. Alexander*
48 F.3d 1477 (9th Cir. 1995)......................................................................5

*United States v. Carty*
520 F.3d 984 (9th Cir. 2008).....................................................................11

*United States v. Lizararras-Chacon*
14 F.4th 961 (9th Cir. 2021)......................................................................11

*United States v. Parlor*
2 F.4th 807 (9th Cir. 2021).........................................................................6

*United States v. Waskom*
79 F.3d 303 (5th Cir. 1999).........................................................................8


<u>Statutes</u>

18 U.S.C.

    § 924...............................................................2, 3, 9, 10, 12

    § 1957.........................................................................9

    § 3553...............................................................11, 12, 13

<u>Secondary Sources</u>

United States Sentencing Guidelines

§ 2B1.1................................................................................3, 6

§ 2B3.1.......................................................................3, 4, 5, 7, 9

§ 3D1.4.................................................................................10

# Introduction

This case is before the Court for resentencing after a partially successful appeal, which resulted in reversal of two counts of conviction.

In 2012, the jury convicted Monico Dominguez of two counts of conspiracy to commit Hobbs Act robbery, one count of Hobbs Act robbery, one count of attempted Hobbs Act robbery, four counts of money laundering, and two counts of possessing a firearm during a crime of violence.  In light of then-existing mandatory minimum terms for stacked 18 U.S.C. § 924(c) counts, this Court sentenced Dominguez to 384 months on the § 924(c) counts and 1 day on the remaining counts.  (Supplemental Presentence Report ("Supplemental PSR") at 1).

In March 2022, based on the combination of (1) post-sentencing changes under the First-Step Act removing the 25-year mandatory minimum, (2) the risk of Covid-19 infection, and (3) Dominguez's rehabilitation, this Court reduced Dominguez's sentence to 165 months in prison, a 6-month special term of supervised release at a residential reentry center ("RRC"), and then a 3-year regular supervised release term on various terms.  (3/9/22 Hearing RT at 23-27; Supplemental PSR at 1).

Then, in September 2022, after the Supreme Court decided *Taylor* and the grant, vacate, and remand order from the Supreme Court, the Ninth Circuit reversed Dominguez's 18 U.S.C. § 924(c) conviction in Count 10 and a money laundering conviction in Count 4 and remanded for resentencing on the remaining counts.

///
///
///
///

**Summary of Argument**

For three reasons, this Court should consider resentencing Dominguez to a slightly lower term of 149 months.

First, following the appellate reversal and revised advisory Guidelines calculation, the range is lower than what the Court has calculated originally (or what the parties contemplated when the Court reduced Dominguez's sentence). U.S. Probation now calculates the revised range as offense level 31, criminal history category I, with the range of 108 to 135 months.

While we largely agree with the Probation's calculation, we object to one 2-evel enhancement for taking property of a financial institution. We do not believe the Government has proven by preponderance of the evidence that the robbery in Count 2 was of property of a financial institution (as defined in U.S.S.G. § 2B3.1(b)(1)) or that such a taking was an object of the robbery. So our proposed calculation is offence level 30, criminal history category I, with the range of 92 to 121 months. And we agree with probation that the guideline range for 18 U.S.C. § 924(c) violation is the mandatory minimum term of 60 months. The proposed term of 149 months would be only three months lower than the low point of the advisory Guidelines range.

Second, not only is the advisory Guidelines range lower, but Dominguez now stands before the Court convicted of less counts than he was in March 2022.

And third, since the Court granted the motion in March 2022, Dominguez has continued to program well in prison. He has completed the 500-hour Unicor factory work assignment. He continued to take classes, including a drawing class; several examples of his work are attached to supporting declaration of counsel. He avoided serious disciplinary

infractions.[1]

And once Dominguez completes his prison sentence and a special term of supervised release at an RRC, he has a viable release plan, which includes living with his brother and his family, and a job offer from Chckles garage in in Santa Rosa, California.

For these reasons, this Court should resentence Dominguez to 149 months in prison, which would lead to immediate completion of his prison sentence and beginning to serve the 6-months special term of supervised release at an RRC in the San Francisco Bay Area.

**Argument**

**In Light of the Reduced Number of Counts of Conviction, the Reduced Advisory Guidelines Range, and Dominguez's Continuing Rehabilitation, the Court Should Reduce Dominguez's Prison Term from 165 Months to 149 Months**

**A.     Objection to the Proposed 2-level Increase Under U.S.S.G. § 2B3.1(b)(1) for Taking Property Belonging to a Financial Institution**

In calculating the offense level for Group 1 (conspiracy to commit Hobbs Act Robbery, Hobbs Act robbery and Money Laundering; counts 1, 2, 5-7), the probation office proposes a 2-level increase under U.S.S.G. § 2B3.1(b)(1) for taking property of a financial institution.  We object because the Government has not proven by a preponderance of the evidence that Dominguez had taken money belonging to a financial institution or that such

---

[1] Dominguez had a minor infraction in November 2022 – an unauthorized possession of an item – for which he had 30 days of loss of commissary privileges.

a taking was the object of the robbery. [2]

Under this Guideline, the offense level is to be increased by 2 levels "if the property of a financial institution or post office was taken, or if the taking of such property was an object of the offense."

Neither the text of this guideline nor its application notes define what a "financial institution" is. But see *United States v. Alexander*, 48 F.3d 1477 (9th Cir. 1995) (applying § 2B3.1(b)(1) in a case involving bank robbery). The theft guideline (§ 2B1.1) defines a financial institution in a way that does not reasonably cover an armored car company delivering cash:

> Financial institution includes any institution described in 18 U.S.C. § 20, § 656, § 657, § 1005, § 1006, § 1007, or § 1014; any state or foreign bank, trust company, credit union, insurance company, investment company, mutual fund, savings (building and loan) association, union or employee pension fund; any health, medical, or hospital insurance association; brokers and dealers registered, or required to be registered, with the Securities and Exchange Commission; futures commodity merchants and commodity pool operators registered, or required to be registered, with the Commodity Futures Trading Commission; and any similar entity, whether or not insured by the federal government.

The money here was taken from Garda, a cash logistics company (https://cash.garda.com/about-us). The company offers "modern cash processing for consumer businesses and financial institutions," a description that suggests, at least as a matter of common usage, that Garda itself is not a

---

[2] We acknowledge that we did not raise this issue at the time of the original sentencing.

financial institution.

Similarly, at trial, the company was described as shipping money transfer across state lines. (6 ER 947-48). It was also described as "cash logistics" or "armored car" company. (6-ER-948). As noted earlier, assuming the definition of a financial definition to be consistent with the one in § 2B1.1, application note 1, an armored car company is not listed and is not analogous to any of the types of businesses described there. Because Garda itself is not a financial institution, to the extent the money taken is the property of Garda, the enhancement cannot apply. The only victim entitled to restitution listed in the original judgment is Garda. (CR 186 at 5).

But even if we assume, as did the probation officer, that Garda is merely a cash delivery company and it does not become the owner of the money it delivers for its customers, the enhancement still cannot be sustained.

The Government's obligation to prove any sentencing fact is, *at minimum*, by preponderance of evidence: more likely than not standard. E.g., *United States v. Parlor*, 2 F.4th 807, 816–17 (9th Cir. 2021).

The Government cannot and did not meet its burden here. The trial evidence shows that on the morning of the robbery, the Garda armored car in questioned picked up from an Oakland warehouse $9,305,528.00. (6-ER-947). That money belonged to banks (which are likely covered financial

institutions) and private commercial customers.  (6-ER-949).    The money taken in the robbery was $908,080, which is 10 percent of that amount.  (6-ER-937).  According to law enforcement, that money was to be delivered from the Garda warehouse to "customers *and* bank customers."  (6-ER-946).  Garda and law enforcement testimony shows that the money belonged to two different type of customers, one of the presumably not banks, and we do not know who they are or whether they are a covered "financial institution."

So even if were to assume that money taken in the robbery was taken only from the money picked up that morning, there is no way to say whether any part of that $907,000 taken belonged to a financial institution, rather than a private commercial customer (like, for example, payrolls or receipts of a consumer business) that does not meet the definition of a "financial institution" under § 2B3.1(b)(1).  (6-ER-949; see also https://cash.garda.com/about-us).

Probation office's analysis does not address this issue, though we explicitly flagged it in detail in discussing whether this enhancement should apply.[3]  The probation office relies on the fact that Garda's business generally

_____

[3] Nothing here should be taken as disparaging the work of the probation office specialist preparing this report.  We appreciate the opportunity to discuss these issues before the report was submitted.  We simply note that we had presented these arguments to the probation office and the analysis ultimately has not changed or identified any evidence that would contradict what we argue.

involves pick ups from financial institutions. (Supplemental PSR ¶ 3). That is a true, but incomplete statement. As noted earlier, Garda also pickups up from private businesses that may not meet the definition of a financial institution, as evidenced by the pickup on the morning of the robbery. There is no evidence about the percentage of the money belonging to banks vs. the money belonging to commercial customers, or about the identity of those other customers.

Plus, trial evidence shows that the money was taken from the vault, yet there is no evidence where the money in the vault came from. (2-ER-228-29). Again, Garda delivers cash for financial institutions *and private consumer businesses*. It would be speculative on this record to find that at least some of the money taken belonged to a financial institution based only on generalized nature of one aspect of Garda's business.

Finally, the enhancement cannot be added on the theory that the object of the robbery was to take money from a financial institution. The trial evidence shows that Garda was targeted only because Dominguez's cousin worked for Garda. (3-ER-263, 266-69). There is nothing from which to infer the object of this robbery was to rob a financial institution. Compare *United States v. Waskom*, 179 F.3d 303, 314 (5th Cir. 1999) (no clear error in imposing this enhancement based on evidence that the armored car company routinely traveled through a specific geographic area making routine stops at

federally insured banks; there was also evidence of the defendant's co-conspirator surveying the armored car as it made deliveries to the banks);

As discussed earlier, Garda itself is not a financial institution.  Nor is there any evidence of intent to commit the robbery to target the money Garda delivers for a financial institution.  The evidence shows this to be a robbery of opportunity, with no thought being given to whether the money is taken from a qualifying financial institution.

For these reasons the 2-level enhancement under § 2B3.1(b)(1) should not apply.

**B.   The Correct Offense Level for the Non-18U.S.C. § 924(c) Group Should Be Offense Level 30, Criminal History Category I, with the Range of 92-121 Months; For 18 U.S.C. § 924(c), it is 60 Months**

In light of our objection in subpart A, we think the offense for the non-§ 924(c) group of counts should be offense level 30, criminal history category I, the range of 92-121 month.  This is a one-offence level difference with the calculation proposed by the probation office, with the range being slightly lower.  Here is how we get to our numbers.

For Group 1 (Counts 1, 2, 5-7), the base offense level is 20, +2 (for physically tying one of the guards during the robbery), +1 for stealing one of the guard's firearm during the robbery, +3 for t he loss amount above $800,00,+1 because Dominguez was convicted under 18 U.S.C. § 1957.  And

+2 for role in the offense, for a total of 29.  This is the same calculation as the probation office proposes, except for the disputed 2-level increase re: taking funds belonging to a financial institution.  (Supplemental PSR at 3-4).

We also agree with probation that for Group 2 (conspiracy to commit robbery in Count 8 and attempted robbery in Count 9), the offense level is 22. (Supplemental PSR at 4).

Then, under § 3D1.4 (a) and (b), because the difference in offense level in groups 1 and 2 is between 5 and 8 levels, the offense level for Group 1 is increased by 1 level to offense level 30.  Under § 3D1.4, the combined offense level for groups 1 and 2 is level 30.  And because Dominguez is in criminal history category I, the corresponding advisory Guidelines range is 92 to 121 months.

Finally, for Group 3 (Count 3, possession of a firearm in the crime of violence), the offense level is the mandatory minimum term of 60 months. 18 U.S.C. § 924(c); §2K2.4(b); Supplemental PSR at 5.  Because *Alleyne v. United States* requires a jury finding on whether Dominguez brandished a firearm under § 924(c), and the jury was not asked and did not make the brandishing finding in the verdict, the mandatory minimum term is 60 months, not 84 months.  *Alleyne v. United States*, 570 U.S. 99 (2013)

///

///

**C.    Under 18 U.S.C. § 3553(A), this Court Should Resentence Dominguez to 149 Months**

### 1.    General legal principles

The advisory Guidelines are only a starting point for selecting a sentence.  *Kimbrough v. United States*, 554 U.S. 85 (2007).

The key goal for the sentencing court under 18 U.S.C. § 3553(a) is to impose a sentence sufficient, but not greater than necessary to reflect the seriousness of the crime, promote respect for the law, provide just punishment and adequate deterrence, to protect the public, and to provide Dominguez with the needed vocational and educational training.  18 U.S.C. § 3553(a); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

In selecting the sentence, this Court should consider factors, like nature and circumstances of the offense, Dominguez's history and characteristics, the kinds of sentences available, the range established by advisory Guidelines, any pertinent policy statement by the Sentencing Commission, and the need to avoid sentencing disparity among defendants with similar records.  *Carty*, 520 F.3d at 991.

Plus, because punishment must fit the offender, not just the underlying crime, sentencing courts must use the fullest information available.  *Pepper v. United States*, 562 U.S. 476, 487-88 (2011).  That means that sentencing judges can consider post-sentencing rehabilitation.  *Id.* at 480, 488; accord *United States v. Lizararras-Chacon*, 14 F. 4th 961, 966-67 (9th Cir. 2021.)  It

also includes post-sentencing chances in the law.  *Id.* at 966-67.

### 2.    The Court should resentence Dominguez to 149 months

In March 2022, this Court reduced Dominguez's sentence from 384 months to 165 months, and a term of supervised release with the special condition that Dominguez serve 6 months of supervised release at a halfway house.

 Probation has recommended that the Court reimpose the same 165-month sentence now.

Yet because of the appellate reversal, reduced Guideline range, and Dominguez's continuing rehabilitation, this Court should consider reducing the sentence to 149 months, for three reasons.

First, the proposed sentence is only a modest downward variance from the low point of the recalculated advisory Guidelines range of 152 months (92 months on non-§ 924(c) counts plus 60 months consecutive on the § 924(c) charge in Count 3).

Second, it is justified by the fact that not only is the advisory Guidelines range is lower, but Dominguez now stands convicted of lesser number of counts than earlier.  This Court repeatedly said   that a sentence in the 151 to 188 months range is a proper § 3553(a) sentence here.  149 months is only a couple of months lower than the low point of that range.

Third, resentencing Dominguez to 149 months still reflects how

dangerous his crimes of convictions were.  Dominguez, who had no record to speak of before these crimes, spent more than a decade in prison.  And he would not be going straight home at the end of his prison sentence, as he still has a 6-month RRC term to complete before the 3-year supervised release term begins.  It is still a long prison sentence appropriately reflecting seriousness of his criminal conduct.

But what 149-month sentence would also do is allow Dominguez to start slowly transitioning back to community life.  The RRC where he would spend the first six months would be in the San Francisco area, which would place him closely to family.  Dominguez may be able to take advantage of the job offer he already has and continue to pay victim restitution.

It would also allow Dominguez to reduce the heightened risk of a more serious form of Covid-19 infection he faces in prison because of his diabetes and Stage 2 kidney disease.

And Dominguez has shown that is ready for this next chapter of his life.  He has continued to work and take classes since this Court reduced his sentence.  Dominguez had a minor slip up in November, but the RRC term he has to complete would provide a structured environment in which to transition back to community life.

Plus, as a practical matter, resentencing Dominguez to 149 months may only speed up the RRC transfer by only 4 to 10 months.  Under the First

Step Act, BOP can transfer inmates to RRC in the district of their residence as early as one year before Dominguez's projected release date of May 12, 2024. Dominguez is eligible for home detention in November 2023.

Finally, if the Court believes that 149 months is insufficient time under 18 U.S.C. § 3553(a),for the same reasons, the Court should consider lowering the sentence to term between 150 and 164 months.

## Conclusion

For these reasons, this Court should resentence Dominguez to 149 months and order his immediate release to begin serving his supervised release term.

Respectfully submitted,

DATE:   January 12, 2023            By:   *Gene D. Vorobyov*

s/ Gene D. Vorobyov
Attorney for Defendant
MONICO DOMINGUEZ